FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 AUG 19 PM 2: 56

**ENTERED** U.S. DISTRICT COURT
N.D. OF ALABAMA

AUG 19 1997

| | |
|---|---|
| THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, et. al, | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| JOE ADAMS, et. al, | ) ) |
| Defendants. | ) |

CIVIL ACTION NO. 97-G-0478-S

### MEMORANDUM OPINION

This action arises out of the marketing and sale by the
plaintiffs, The Mutual Life Insurance Company of New York and
MONY Life Insurance Company of America (hereinafter jointly
referred to as "the plaintiffs" or "Mutual"), and their agents of
so-called "vanishing premium" life insurance policies.  It is
possible with this type of policy to offset the annual premiums
by applying future dividends and cash values from these policies.
It is also possible that the investment return on the policies
will not cover the future premiums.  The named defendants
purchased these types of policies.  Mutual alleges the defendants
to this action intend to assert claims based upon an alleged
fraudulent "pattern and practice" on the part of Mutual in
marketing these policies through its agents.  Mutual seeks to
have this court enter an order:

   1.   Declaring that [Mutual] has paid the maximum
        amount of punitive damages allowable under the
        Constitution and laws of the State of Alabama and

96

the United States Constitution in connection with the alleged conduct described herein and to the extent such conduct occurred or involved Alabama policyholders, and neither Mutual nor MLOA may be subject to any further claim or award of punitive damages based upon such alleged conduct in any court, state or federal;

2   Declaring that the October 8, 1996 Order from the Circuit Court of Barbour County, Alabama ... is entitled to Full Faith and Credit, and precludes further claims for punitive damages against [Mutual] ...;

3.   Declaring the rights, obligations, responsibilities and remedies of the parties with respect to the policies at issue;

4.   Declaring that [Mutual] is [not] liable to any of the defendants for any of the alleged deceptive sales practices;

5.   Declaring that [Mutual has not] breached any of the insurance contracts at issue;

6.   Abating or staying each of the pending state court actions brought by any defendants herein until such time as the determination regarding class certification in Ballard v. The Mutual Life Ins. Co. of New York, Civil Action No. CV-96-B-3019-J, has been made;

7.   Requiring each defendant to respond and assert whatever claims he or she may have with respect to the life insurance policies at issue so that the rights, obligations, and responsibilities of the parties, under the policies may be fully, finally, and forever determined;

8.   Enjoining and restraining each of the parties ... from instituting suit or prosecuting further against [Mutual] in relation to or on account of the alleged "pattern and practice" of conduct ... and the policies at issue.

9.   Providing such other or different relief as the Court deems necessary or appropriate.

(Amended Complaint, at pp. 35-36.)

2

## PROCEDURAL BACKGROUND

The October 8, 1996, order from the Circuit Court of Barbour County, Alabama (hereinafter "Barbour County Order") was the result of a settlement of numerous cases pending in Alabama state courts against Mutual. That order purports to prohibit any further award of punitive damages against Mutual with respect to the "pattern and practice" of conduct toward all Alabama policy holders. In pertinent part the order provides:

> The Court further concludes and orders, therefore, that
> the imposition in any other proceedings of punitive
> damages against Mutual or any of its affiliates for the
> same or similar conduct occurring or alleged to have
> occurred at any time up to the date of this Order would
> be duplicative, excessive, and in violation of the
> Constitution of the State of Alabama, and the United
> States Constitution, and the jurisprudence of this
> state.[1]

In addition to litigation in Alabama courts, the marketing and sale of vanishing premium policies by Mutual has been the subject of a class action lawsuit filed in New York state court, styled Goshen v. The Mutual Life Ins. Co. of New York and MONY Life Ins. Co. of America, Index No. 95-600466 (hereinafter "Goshen"). A nationwide class of plaintiffs was certified in Goshen. Mutual asserts that approximately 100 Alabama residents have opted out of that lawsuit. Many of those opt-outs have filed suit in Alabama and many are named defendants in the present action.

---

[1]  A copy of the order is attached to Plaintiffs' amended complaint.

3

In addition to the above, <u>In Re Mutual Life Insurance Company of New York Premium Litigation</u>, MDL No. 1143, a multidistrict litigation consolidated by the Judicial Panel on Multidistrict Litigation, is pending in the United States District Court for the District of Massachusetts.   Individual plaintiffs have also brought actions against Mutual and its agents in Alabama State courts.[2]   Presumably these state court actions are still pending.

This action was filed, in the words of Mutual's attorneys,

> to allow a single court to resolve a multiplicity of closely related claims in a single, efficient, expeditious proceeding.  Should this Court decline to exercise its jurisdiction over this lawsuit, the claims of the policy holder defendants will be asserted in piecemeal fashion through multiple, duplicative actions in a host of different venues, and would almost certainly result in inconsistent and irreconcilable rulings and verdicts from the various courts and juries.

---

[2]   Three of those actions (Civil action Nos. 97-G-519-S, 97-G-561-S, and 97-G-562-S) were removed by Mutual to the United States District Court for the Northern District of Alabama and were assigned to this judge.  All three of those actions involved plaintiffs originally named as defendants to this action.  Each action also named as a defendant the agent who sold the Mutual policies.  Because all three agents were Alabama residents, this court remanded them to state court.  At least three other state court actions were also removed to the United States District Court for the Northern District of Alabama and were assigned to other judges of this court.  Two of those actions, Civil Action Nos. 96-B-3019-J and 96-B-3179-J, were transferred to MDL No.1143 over the objection of plaintiffs' counsel.  These objections were based upon pending motions to remand.  The Panel overruled those objections and noted that the Massachusetts court could rule on the motions to remand to Alabama state court.  The third action, 97-P-411-W, was transferred without objection.

(Plaintiffs' brief, at pp. 2-3.)  Numerous motions to dismiss the instant action have been filed.  At the court's regularly scheduled motion docket on June 27, 1997, the parties agreed that the motions would be submitted on briefs and oral argument was waived.

**DISCUSSION**

I.

**THE SCOPE OF A DISTRICT COURT'S DISCRETION IN**
**DECLARATORY JUDGMENT ACTIONS**

This action was brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.  It is now clear that in declaratory judgment actions where jurisdiction is based upon diversity of citizenship, federal district courts have wide discretion whether or not to entertain such actions.  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  Wilton v. Seven Falls Co., 515 U.S. 277, 132 L. Ed. 2d 214, 223, 115 S. Ct. 2137, 2142 (1995).  In Wilton, the Court was asked to determine which of two contrary standards governs a district court's decision not to entertain a declaratory judgment action.  A question had arisen about the continued application of the standard set forth in Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 86 L. Ed. 1620, 62 S. Ct. 1173 (1942).

5

In <u>Brillhart</u>, an action brought pursuant to the Declaratory Judgment Act, the Court decided that "[a]lthough the District Court had jurisdiction of the suit, ... it was under no compulsion to exercise that jurisdiction." 316 U.S. at 494. <u>Brillhart</u> had been understood to vest with the district courts broad discretion in deciding whether to entertain an action brought under the Declaratory Judgment Act. However, that standard had been called into question by subsequent Supreme Court Decisions that applied an "exceptional circumstances" test for determining whether a federal court should abstain when there was a parallel state court action pending. <u>See</u>, <u>Wilton</u>, 132 L. Ed. 2d at 218, and cases cited therein.

The <u>Wilton</u> Court summarized the holding in <u>Brillhart</u>:

Over 50 years ago, in <u>Brillhart v. Excess Ins. Co.</u>, this Court addressed circumstances virtually identical to those present in the case before us today. An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy. The District Court dismissed the action in favor of pending state garnishment proceedings, to which the insurer had been added as a defendant. The Court of Appeals reversed, finding an abuse of discretion, and ordered the District Court to proceed to the merits. Reversing the Court of Appeals and remanding to the District Court, this Court held that, "[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction." The Court explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." The question for a district court presented with a suit under the Declaratory Judgment Act, the Court found, is "<u>whether</u>

6

> <u>the questions in controversy between the parties</u> to the
> federal suit, and which are not foreclosed under the
> applicable substantive law, <u>can better be settled in</u>
> <u>the proceeding pending in the state court</u>."

132 L. Ed. 2d at 220-21 (citations omitted)(emphasis added). The
Court considered the line of cases that had caused some courts of
appeal to question the continued application of <u>Brillhart</u> to
actions brought under the Declaratory Judgment Act. The Court
concluded the <u>Brillhart</u> standard was still applicable:

> Distinct features of the Declaratory Judgment Act, we
> believe, justify a standard vesting district courts
> with greater discretion in declaratory judgment actions
> than that permitted under the "exceptional
> circumstances" test of <u>Colorado River</u> and <u>Moses H.</u>
> <u>Cone</u>. No subsequent case, in our view, has called into
> question the application of the <u>Brillhart</u> standard to
> the <u>Brillhart</u> facts.

132 L. Ed. 2d at 223.

        In <u>Wilton</u>, the court also resolved a conflict among the
circuits as to the standard to be applied in reviewing a district
court's exercise of discretion. The Court held that such
determinations would be reviewed by appellate courts for abuse of
discretion, and not <u>de novo</u>. 132 L. Ed. 2d at 225 ("We believe
it more consistent with the statute to vest district courts with
discretion in the first instance, because facts bearing on the
usefulness of the declaratory judgment remedy, and the fitness of
the case for resolution, are peculiarly within their grasp.").

        Before turning to an analysis of the factors to be
considered by the court in the exercise of its discretion, the
court notes that the extensive discussion of various abstention

7

concepts by the parties is inapposite.  Though related to these
doctrines, the discretion of a district court not to entertain a
diversity action brought pursuant to the Declaratory Judgment Act
derives from the act itself.

> On its face, the statute provides that a court "may
> declare the rights and other legal relations of any
> interested party seeking such declaration."  The
> statute's textual commitment of discretion, and the
> breadth of leeway we have always understood it to
> suggest, distinguish the declaratory judgment context
> from other areas of the law in which concepts of
> discretion surface.

Wilton, 132 L. Ed. 2d at 223 (citations omitted).  It should
especially be noted that cases in which plaintiffs seek to assert
rights granted by federal statute through the use of the
Declaratory Judgment Act present a situation different from the
instant case.  Although the plaintiffs have asked this court to
declare that Mutual "has paid the maximum amount of punitive
damages allowable under the Constitution and laws of the State of
Alabama and the United States Constitution," this constitutes an
affirmative defense to the displaced coercive action of the
defendant, and does not convert Mutual's complaint for
declaratory relief into one raising a federal question.  First
Federal Savings and Loan Association of Lake Worth v. Brown, 707
F.2d 1217, 1220 (11th Cir. 1983).  Nor does Mutual's desire to
have this court declare that the Barbour County Order is entitled
to full faith and credit give rise to federal question
jurisdiction.  See, McDougald v. Jenson, 786 F.2d 1465, 1479

8

(11th Cir. 1986).  Mutual no doubt recognized this and asserted jurisdiction based on diversity of citizenship.  Therefore, even though Mutual may raise issues of federal law as defenses to claims asserted by the policyholders, this case does not involve the positive enforcement of federal law and is not distinguishable in that regard from <u>Brillhart</u> and <u>Wilton</u>.

With this as the backdrop, the court will now consider the factors weighing in favor of and against its entertaining this action.  In <u>Brillhart</u>, the Court set forth a nonexclusive list of factors to be considered.  Those factors derive from the Court's conclusion that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  316 U.S. at 495.  The aim of that analysis is to determine "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court."  <u>Brillhart</u>, 316 U.S. at 495.

II.

**CAN THE AGENTS BE MADE PARTIES TO THIS ACTION?**

One of the important criteria in the instant case is "whether necessary parties have been joined," and "whether such

9

parties are amenable to process in [the state] proceeding."
Brillhart, 316 U.S. at 495.  Normally, this inquiry is focused
upon the state court.  In the instant case, there is no doubt
that all necessary parties are amenable to suit in state court.
This inquiry raises one of the arguments put forth by the
policyholders as grounds for dismissing this action—the problem
of joinder of the agents in this federal court action.  Because
some, if not all, of the agents who sold the policies are
residents of Alabama, complete diversity of citizenship would not
exist if they were joined in the present action.

        Mutual has argued that in spite of the lack of complete
diversity, the agents could be made parties through a technical
reading of the Supplemental Jurisdiction Statute.  28 U.S.C.
§ 1367.  Section 1367(a) provides in pertinent part as follows:

> Except as provided in subsections (b) and (c) ... in
> any civil action of which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that
> are so related to claims in the action within such
> original jurisdiction that they form part of the same
> case or controversy under Article III of the United
> States Constitution.  Such supplemental jurisdiction
> shall include claims that involve the joinder or
> intervention of additional parties.

However, Section 1367(b) provides an exception in diversity
cases.  Section 1367(b) provides as follows:

> In any civil action of which the district courts
> have original jurisdiction founded solely on section
> 1332 of this title, the district courts shall not have
> supplemental jurisdiction under subsection (a) over
> claims by plaintiffs against persons made parties under

10

> Rule 14, 19, 20, or 24 of the Federal Rules of Civil
> Procedure ... when exercising supplemental jurisdiction
> over such claims would be inconsistent with the
> jurisdictional requirements of section 1332.

(emphasis added). Mutual argues that if claims are to be
asserted against the individual agents, they would be asserted by
the defendants to this action and, therefore, section 1367(b)
would not apply. The court disagrees.

In declaratory judgment actions, the roles of the
parties are reversed. This role reversal is, however, not
absolute. Normally, the burden of proof is not altered by the
procedural posture in which declaratory judgment actions are
presented. For this reason, it is common practice in declaratory
judgment actions to allow the defendant to present his case
first, since he normally has the burden of proof. (The typical
example involves an insurance company bringing suit after a loss,
seeking a declaration that no coverage exists.) In a proper
case, the parties might even be realigned to reflect their true
interest in the controversy. If that were done in this case,
Mutual would find itself a defendant and the policyholders would
become plaintiffs. Clearly at that point any claims by the
policyholders against the agents would be asserted by plaintiffs
and would be prohibited by section 1367(b). As has been seen,
the role reversal aspect of declaratory judgment actions
sometimes requires that they be analyzed differently than
ordinary actions when jurisdictional determinations as to the

11

presence of a federal question are involved.  Before determining
what effect this role reversal should have in interpreting
section 1367(b), the policies behind the supplemental
jurisdiction statute should be considered.

The policies behind the supplemental jurisdiction
statute can only be served by reading section 1367(b) to prohibit
the assertion of claims against the agents.  To do otherwise
would allow the Supplemental Jurisdiction Statute to emasculate
the requirement of complete diversity first set forth in
Strawbridge v. Curtiss, 3 Cranch 267, 2 L. Ed. 435 (1806), almost
two hundred years ago.  Prior to the adoption of the Supplemental
Jurisdiction Statute, the Supreme Court noted the possibility for
overturning the complete diversity requirement through the use of
ancillary jurisdiction.  "[A] plaintiff could defeat the
statutory requirement of complete diversity by the simple
expedient of suing only those defendants who were of diverse
citizenship and waiting for them to implead nondiverse
defendants."  Owen Equipment and Erection Co. v. Kroger, 437 U.S.
365, 374, 57 L. Ed. 2d 274 (1978).  It is precisely the situation
presented in Kroger—a plaintiff asserting a claim against a party
brought into the case by one of the defendants—that section
1367(b) is designed to prevent.  Had the policyholders filed this
action in federal court solely against Mutual, section 1367(b)
would clearly prohibit them from asserting claims against the
agents even if Mutual impleaded them.  The policy of complete

12

diversity compels the equivalent result in declaratory judgment actions.  To hold otherwise would lead to an unwarranted emasculation of the complete diversity requirement.  This result clearly was not contemplated by Congress in enacting section 1367(b)—a section enacted to preserve the rule of complete diversity in the situation presented in Kroger.  There is nothing in the legislative history to suggest that Congress envisioned such an emasculation of the rule of complete diversity and the wording of the statute compels that conclusion.  The last phrase of section 1367(b), ("when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332") clearly refers to the doctrine of complete diversity.  See Kroger, 437 U.S. at 373-74 (concluding that the repeated re-enactment of 28 U.S.C. § 1332, after the Court had interpreted it to require complete diversity, clearly demonstrated "a congressional mandate that diversity jurisdiction is not to be available when any plaintiff is a citizen of the same State as any defendant").

        An example makes the threat to complete diversity clear.  Suppose a resident of Alabama were injured in an automobile accident involving a truck.  The truck is owned by an out-of-state truck line and was being driven, during the course and scope of his employment, by an Alabama resident.  If the rationale of Mutual were adopted, the out-of-state corporation could immediately file a declaratory judgment action against the

13

injured party seeking a declaration that it is not liable for his injuries. The injured party—the defendant to the declaratory judgment action—would then be allowed, under Mutual's interpretation, to implead the nondiverse driver. Through this interpretation of section 1376(b), the action would end up in federal court in spite of the fact that the injured party could not initiate it there against both defendants, and in spite of the fact that it could not be removed if filed by the injured party against both defendants in state court. Such utilization of the Declaratory Judgment Act would operate as an impermissible back-door removal device. This is an unacceptable result and would open the federal courts to a flood of cases that should properly be in state court.

In the context of declaratory judgment actions, Mutual's literal reading of the Supplemental Jurisdiction Statute would lead to an unwarranted expansion of federal jurisdiction. This expansion is both undesirable and contrary to the policy behind the restriction imposed by section 1367(b). In cases in which jurisdiction is based upon 28 U.S.C. § 1331, the Declaratory Judgment Act also threatens an unwarranted expansion of federal jurisdiction. In those cases, the plaintiff in the declaratory judgment action will often raise defenses based upon federal law. In such cases, courts have utilized a variation of the well-pleaded complaint rule (the normal test for the existence of federal question jurisdiction) to determine whether

14

the action arises "under the Constitution, laws or treaties of
the United States." In declaratory judgment actions, the well-
pleaded complaint rule is satisfied by showing that the
"displaced coercive action" is created by federal law. City of
Huntsville v. City of Madison, 24 F.3d 169, 172 (11th Cir. 1994).
The "displaced coercive action" is the action which would have
been instituted by the defendant had the declaratory judgment
action not been filed. This analysis, applied to another statute
granting federal jurisdiction, 28 U.S.C. § 1331, should be
equally applicable to the Supplemental Jurisdiction Statute. In
both instances the use of the declaratory judgment procedure
would otherwise broaden the grant of jurisdiction beyond its
appropriate limits. Therefore, whether or not the additional
parties may be brought in under section 1367 should be determined
by reference to the displaced coercive action. In this case the
displaced coercive action is each policyholder's claim against
Mutual. Since the claims against the agents would be asserted by
the plaintiffs to the displaced coercive actions, section 1367(b)
prohibits their assertion in this declaratory judgment action.

### III.

### DECLARATORY JUDGMENT ACTIONS SHOULD NOT USED TO DESTROY THE RULE OF COMPLETE DIVERSITY OR TO ALLOW FORUM SHOPPING.

Even if this court's interpretation of section 1367(b)
is found on appeal to be incorrect, the undesirable results can

15

be avoided through the use of the court's uniquely broad discretion, now reaffirmed by <u>Wilton</u>, not to hear declaratory judgment actions that have as their jurisdictional basis diversity of citizenship.[3]   Indeed, in this circuit the impropriety of using the Declaratory Judgment Act to acquire federal jurisdiction when none would otherwise exist has been noted.

> The Declaratory Judgment Act was not intended to enable a party to obtain a change of tribunal from a state to federal court, and it is not the function of the federal declaratory action merely to anticipate a defense that otherwise would be presented in a state action.

<u>Angora Enterprises v. Condominium Ass'n</u>, 796 F.2d 384, 388 (11th Cir. 1986)(quoting 10A C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure: Civil 2d</u>, § 2785 at 630-32).

Therefore, if Mutual's interpretation of section 1367(b) is found to be correct, this court would feel compelled to exercise its discretion not to entertain this action.  This is necessary in order to prevent a technical interpretation of the

---

[3]   Section 1367(c)(4) allows the district court to decline to exercise supplemental jurisdiction "in exceptional circumstances" when "other compelling reasons for declining jurisdiction" exist.  Because all declaratory judgment actions based upon diversity of citizenship present the same problem, it is unlikely that section 1367(c) was intended to act as a substitute for section 1367(b) in such cases, referring as it does to "exceptional circumstances."  In any event, the court's discretion afforded by the declaratory judgment act affords an alternate means for avoiding undesirable consequences in those actions.

Supplemental Jurisdiction Statute from emasculating the well
settled requirement of complete diversity.

### IV.

### THE CONTROVERSY BETWEEN THE PARTIES CANNOT BE FULLY RESOLVED IN THE ABSENCE OF THE AGENTS.

It is clear to the court that without the presence of
the agents it would be impossible to fully resolve the
controversy between Mutual and the policyholder defendants.
Mutual seeks more than a declaration of its obligations under the
contracts of insurance, which is the normal request in
declaratory judgment actions brought by insurance companies.  In
fact, the major focus of Mutual's request for declaratory
relief—that it is not liable for additional punitive
damages—necessarily involves allegedly fraudulent actions on the
part of the agents who actually sold the policies.  If the agents
are not made parties to this action, the policyholders would be
free to sue the agents for fraud in state court.  Mutual would
almost certainly be joined as a defendant by the state court
plaintiffs.[4]  It would potentially be liable for the actions of
its agents based upon principles of agency.  Some of these
alleged actions of the agents would likely fall outside of the
scope of Mutual's complaint for declaratory relief in this court.
Therefore, if the agents are not made parties to this action,
Mutual would certainly find itself defending the multiple state

---

[4]    The undersigned bases this conclusion on 49 plus years in
the courtroom.   Plaintiffs without fail join the insurance
company when they allege fraud claims against its agent.

lawsuits which it is attempting to avoid.[4]   The inverse of the
inquiry in Brillhart is presented:   Can the federal court
adjudicate all the matters in controversy between the parties?
Unless the agents are joined, the answer is no.   Since Mutual
would be free to assert each and every defense it seeks to have
this court declare to be valid in any state court proceeding, the
balance weighs heavily in favor of allowing all issues to be
decided in those proceedings.   The avoidance of piecemeal
litigation—with its inherent inefficiency and possibility of
contradictory results—is a strong reason for yielding to the
state court forum.

## V.

### THE POTENTIAL FOR VEXATIOUS INTERFERENCE

An additional factor weighing against entertaining the
present declaratory judgment action—if the agents are not joined—
is the potential complexity of a single action encompassing a
multitude of policyholders.   While there certainly would be
common questions of fact and law, the individual circumstances
surrounding the sale of policies to each individual policyholder
would require, in effect, a separate trial as to each individual
defendant.   Mutual has asked that the court declare the rights

---

[4]   The court notes that Mutual has apparently chosen not to
avail itself of the Alabama Declaratory Judgment Act, Ala. Code
§ 6-6-222 (1975), which would seem to offer Mutual the single
forum for resolution of its controversy with the Alabama
policyholders who have opted out of the class actions.

18

and obligations of the parties with respect to each of the policies at issue. More importantly, Mutual seeks to require each defendant to "assert whatever claims he or she may have with respect to the life insurance policies at issue so that the rights, obligations, and responsibilities of the parties, under the policies may be fully, finally, and forever determined." Since each policyholder would be free to proceed in state court against the agents, the potential for vexatious interference with the numerous state court proceedings against those agents would be overwhelming. Brillhart strongly cautions against allowing a federal declaratory judgment action to have such effect. The benefits of any common relief this court might grant Mutual would clearly be outweighed by the potential for interference with the state court actions and by the judicial inefficiency inherent in the maintenance of actions in both state and federal court.

## VI.

### TORT ACTIONS ARE ILL SUITED FOR DECLARATORY RELIEF.

Another factor weighing against entertaining the present action is the nature of the declaratory relief sought by Mutual. Mutual seeks a declaration not only of its contractual rights with respect to the policies at issue, but also seeks to have its tort liability with respect to those policies determined as well. Other courts have recognized the undesirability of using declaratory judgment actions to resolve tort claims. See

19

e.g., United Insurance Co. of America v. Harris, 939 F. Supp.
1527, 1531 (M.D. Ala. 1996).

In Harris, the district court noted that other courts
that had addressed the issue, "almost uniformly concluded that
tort claims are ill-suited for declaratory relief." Harris, at
1531. The court also noted the observation of leading scholars
that "it is not one of the purposes of the Declaratory Judgment
Act to enable a prospective negligence action defendant to obtain
a declaration of non-liability." Harris, at 1531 (quoting 10A
Wright, Miller, & Kane, Federal Practice and Procedure § 2765, at
729 (2d ed. 1983).

The court in Harris correctly perceived that one of the
dangers in allowing declaratory judgment actions involving tort
claims is the potential undermining of Rule 11 of the Federal
Rules of Civil Procedure, which requires, among other things,
that factual allegations have evidentiary support.

> Rather than waiting to give the Harrises a reasonable
> period of time to reassess their case in light of the
> anticipated discovery, the insurance companies rushed
> in to court and forced the Harrises into filing an
> answer and asserting a counterclaim of fraud before
> they had made the necessary reasonable reassessment in
> light of any new discovery.

Harris, at 1534. The court then noted the true reason it
believed the declaratory judgment action was filed:

> Indeed, because, from an objective perspective, it
> would have been in the insurance companies' interest to
> have allowed the Harrises to reassess their fraud
> claim, the court is convinced that the true reason
> behind the companies' haste to court was to use the

20

> Declaratory Judgment Act as a tactical device, as a
> vehicle to allow them to choose the place for
> litigating.

<u>Harris</u>, at 1534 (emphasis added).

In the instant case the same conclusion is warranted. Mutual seeks to require each policyholder to assert any fraud claim they might have in the forum of Mutual's choice and at the time of its choosing. In <u>Harris</u>, the court recognized that to allow such actions would entail the very real threat of a mad dash to the courthouse.

> Persons who believed that they had been wronged would
> wait at their peril to make the necessary Rule 11
> inquiry before filing suit. The result would be that
> the deliberative and objective evaluation of claims
> before suit, encouraged, if not required, by Rule 11,
> would be sacrificed in favor of a mad rush by all
> concerned to the courthouse, so as to gain the tactical
> advantage of choosing the place for suit.

<u>Harris</u>, at 1534. In the present case, this consideration is clearly present. Most if not all of the policyholders joined as defendants to the instant action have opted out of the class action lawsuit filed in New York state court. Mutual now seeks to require them in essence to again assert their claims in a lawsuit they did not file. Rule 11 will be better implemented by allowing the individual policyholders to review carefully and without haste their claims and the evidence supporting them rather than require that they assert them according to Mutual's timetable.

VII.

## THIS CASE IS INDISTINGUISHABLE FROM ALFA FINANCIAL CORPORATION V. KEY.

Another case from the Middle District of Alabama is worthy of note. In Alfa Financial Corporation v. Key, 927 F. Supp. 423 (M.D. Ala. 1996), the court was faced with facts virtually identical to those presented in this action. That action arose from the efforts of Alfa Financial Corporation and Alfa Life Insurance Corporation (hereinafter collectively referred to as "Alfa"), "to put an end to litigation in the state courts of Alabama resulting from their alleged fraudulent pattern and practice in making loans." Key at 426. In that action Alfa, like Mutual, had settled actions pending in Barbour County, Alabama. That settlement resulted in a similar order regarding the imposition of further punitive damages.

> This court is firmly convinced that payment of the amounts which [Alfa has] either paid or agreed to pay ... is sufficient to punish [Alfa] for the alleged intent, scheme, and pattern and practice of wrongful conduct set forth above .... The court further concludes that the imposition of additional punitive damages against [Alfa] for such alleged misconduct, scheme, and pattern and practice in excess of the amount already paid ... whether in this case or any other proceeding, would constitute duplicative, multiple, and unjust punishment.

Key, at 426. In Key, Alfa brought suit based upon the federal interpleader statute, 28 U.S.C. § 1335 (which the court determined did not apply) and federal question jurisdiction based on its assertion that the policyholders' pending claims for

22

punitive damages in the Alabama state courts were unconstitutional.[5]  Key, at 431.  The court considered whether to abstain based upon Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), and its progeny.

> The Younger doctrine prohibits federal district courts
> from staying or enjoining pending state court
> proceedings except under special circumstances.  The
> doctrine has been extended to prohibit a federal
> district court from entering a declaratory judgment
> where the judgment would effectively enjoin a state
> proceeding.  In this case, a declaratory judgment that
> the Defendants' pending state claims for punitive
> damages are unconstitutional would have the effect of
> enjoining the state courts from hearing those claims.

Key, at 431 (citations omitted).  The court concluded three elements were necessary in order for a federal court to abstain based upon the Younger doctrine:  (1)  There is an ongoing state judicial proceeding, (2)  the proceeding implicates important state interests, and (3)  there is an adequate opportunity in the state proceeding to raise a constitutional challenge.  Key at 432.  The court concluded the requirements were met:

> This case meets the requirements for Younger
> abstention.  Currently, the Plaintiffs are defendants
> in several civil suits brought in various Alabama state
> courts by the Defendants in this action.  The state
> proceedings implicate the important state interests in
> addressing claims of insurance fraud and possessing the
> full range of remedies, including the remedy of
> punitive damages, to redress findings of fraud.

---

[5]  Although in the instant case jurisdiction is based upon diversity, there is no reason to distinguish Key on that basis.  As will be seen, the  court applied the Younger abstention doctrine (perhaps a result of its view that a federal question was involved) rather than analyzing the case under the Brillhart standard.  However, the rationale is equally applicable.

23

> Furthermore, there are adequate opportunities for the
> Plaintiffs to raise their constitutional challenges to
> the Plaintiffs' claims for punitive damages in the
> state proceeding.   ...   As previously explained by this
> court, procedural safeguards ensure that civil
> defendants in Alabama courts have an opportunity to
> litigate the propriety of awards for punitive damages.
> See Ala. Code § 6-11-23; <u>Green Oil Co. v. Hornsby</u>, 539
> So. 2d 218 (Ala. 1989); <u>Hammond v. City of Gadsden</u>, 493
> So. 2d 1374 (Ala. 1986).

<u>Key</u> at 432.  The court's decision was affirmed in an unpublished

opinion attached hereto as "Exhibit A."  The only way in which

<u>Key</u> might be distinguished from the instant case is that in the

instant case, not all policyholders have filed state court

actions.  As to the policyholders who have filed state court

actions, the case is indistinguishable.  It has been held, in the

context of abstention under the <u>Colorado River</u> doctrine, that the

fact a state court action was filed after the filing date of the

federal action is not determinative.  "This factor 'should not be

measured exclusively by which complaint was filed first, but

rather in terms of how much progress has been made in the two

actions.'"  <u>American Bankers Insurance Co. of Florida v. First</u>

<u>State Insurance Co.</u>, 891 F.2d 882, 885 (11th Cir. 1990)(quoting

<u>Moses H. Cone Memorial Hosp. v. Mercury Constr.</u>, 460 U.S. 1, 103

S. Ct. 927, 74 L. Ed. 2d 765 (1983) at 460 U.S. 21).  The instant

action is in its infancy and any state court action filed up to

the present should be considered, as a practical matter, to be

equal in terms of progress with the instant action.  Therefore,

<u>Key</u> is not distinguishable with respect to those policyholders

who have already filed suit in state court, whether before or after this action was filed.

Furthermore, to limit the court's discretion to refrain from hearing a declaratory judgment action to those instances in which a state court action has already been filed would have the effect of encouraging the filing of such actions. If this court dismissed the action only as to those policyholders who have already filed state court actions, there would undoubtedly be a rush to file such actions by the remaining defendants. The court does not feel Brillhart and Wilton should be read to only allow a court to exercise its discretion when the defendants have already filed a state court action. It is sufficient that the claims and defenses may properly be adjudicated in state court actions should that be necessary. To hold otherwise would encourage potential defendants to declaratory judgment actions to rush to file state court actions—a result that should not be encouraged.

### CONCLUSION

For all the above reasons, the court concludes that entertaining this declaratory judgment action would not be wise. To allow the agents to be joined to this action would eviscerate the principle of complete diversity. In their absence, complete relief will be impossible and the danger of vexatious interference with pending state court proceedings will be great. There would also be great judicial inefficiency involved in such

25

piecemeal litigation.  Therefore, the court will exercise its discretion not to entertain this action.  In this case dismissal, rather than a stay, is the proper method for exercising that discretion.  It is clear to the court that Mutual will be able to assert whatever federal law defenses it wishes in the resulting state court actions and will have available the normal avenues of appeal should those defenses be rejected.  Therefore, nothing is to be gained by this court's retention of jurisdiction.

Accordingly, this court will dismiss this action without prejudice to Mutual's right to raise the issues that are the subject of its complaint for declaratory relief in any appropriate forum.  The court expresses no opinion as to the merits of the issues raised by Mutual's complaint, except that a federal declaratory judgment action is not the proper manner in which to decide those issues.  An order to this effect will be entered contemporaneously herewith.

DONE this 19th day of August 1997.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

26

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 96-6675

D.C. Docket No. CV-95-A-1373-E

```
FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

APR - 3 1997

MIGUEL J. CORTEZ
CLERK
```

ALFA FINANCIAL CORPORATION,
an Alabama Corporation;
ALFA LIFE INSURANCE CORPORATION,
an Alabama Corporation,

Plaintiffs-Appellants,

versus

KENNETH A. KEY,
an Alabama citizen, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

(April 3, 1997)

Before BIRCH and CARNES, Circuit Judges, and GODBOLD, Senior
Circuit Judge.

PER CURIAM:

This case arises from the efforts of Alfa Financial Corporation and Alfa Life Insurance Corporation (collectively "Alfa") to put an end to Alabama state court litigation seeking punitive damages against Alfa for allegedly engaging in a fraudulent pattern and practice in connection Alfa's lending business. Alfa sought to do that by: (1) instituting an "action in the nature of interpleader" to finally determine the punitive damages, if any, that Alfa may still owe related to its allegedly fraudulent course of conduct; and (2) seeking a declaratory judgment that Alabama's punitive damages scheme is unconstitutional. The district court held: (1) that it lacked jurisdiction under 28 U.S.C. § 1335 to adjudicate the action in the nature of interpleader; and (2) that the abstention principles of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746 (1971), and its progeny required the district court to dismiss the claim for declaratory relief "for lack of subject matter jurisdiction."

We affirm the district court's judgment dismissing Alfa's complaint. For the reasons ably discussed by the district court in its opinion, it lacked jurisdiction under 28 U.S.C. § 1335 to entertain Alfa's action in the nature of interpleader. Insofar as Alfa's claim for declaratory relief is concerned, we likewise agree with the district court's discussion of Younger abstention principles and their application to this case.

However, the district court did make a technical error when it held that those abstention principles deprived it of jurisdiction.

2

As the Supreme Court has explained, the Younger doctrine "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 626, 107 S. Ct. 2718 (1986) (emphasis added). For the reasons discussed by the district court, those "strong policies counseling against the exercise of such jurisdiction" are present in this case. See Penzoil Co. v. Texaco, Inc., 418 U.S. 1, 107 S. Ct. 1519 (1987).

Therefore, the district court properly relied on the principles of Younger in dismissing Alfa's claim for declaratory relief, but not because those principles deprived it of jurisdiction. Instead, those principles counsel strongly against the district court's exercise of the jurisdiction that it had. The district court's technical error being of no moment, its judgment of dismissal is due to be affirmed.

AFFIRMED.

3